**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02948-PAB-NRN

JEFFREY T. MAEHR,

      Plaintiff,

      v.

U.S. STATE DEPARTMENT,

      Respondent.

---

**REPLY IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Dkt. 32)**

---

**TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................... 1

II.     ARGUMENT ......................................................................................................... 2

    A.    Mr. Maehr Has Not Properly Alleged A Claim for Mandamus Relief, And He Has Not Cured The Jurisdictional Defects In His Suit................................................................ 2

    B.    The Privileges and Immunity Clause Does Not Apply To § 7345.................................... 4

    C.    Mr. Maehr Has Not Shown A Violation Of His Right To Substantive Due Process........ 8

        1.    The Fifth Amendment Encompasses Both Procedural and Substantive Due Process. . 8

        2.    Courts Analyzing Substantive Due Process Claims Must Determine Whether The Right At Issue Is Fundamental. ........................................................................... 10

        3.    Mr. Maehr's Response Does Not Show There Is a Fundamental Right To International Travel. ......................................................................................... 11

    D.    The Writ *Ne Exeat Republica* And § 7345 Are Different Procedural Tools.................... 16

III.    CONCLUSION ..................................................................................................... 18

**TABLE OF AUTHORITIES**

**Cases**

*Apthekar v. Secretary of State,*
        378 U.S. 500 (1964)...........................................................................................13

*Bishop v. Okla. ex rel. Edmondson,*
        447 F. Supp. 2d 1239 (N.D. Okla. 2006) ................................................................5

*Califano v. Aznavorian,*
        439 U.S. 170 (1978).....................................................................................12, 14

*Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown,*
        656 F. 2d 564, 566 (10th Cir. 1981) .......................................................................3

*Childs v. Weinshienk,*
        320 F. App'x 860 (10th Cir. 2009) .........................................................................3

*Crandall v. Nevada,*
        73 U.S. 35 (1868)..................................................................................................12

*Cummings v. Dean,*
        913 F.3d 1227 (10th Cir. 2019) ..............................................................................9

*Dawson v. Bd. of Cty. Comm'rs,*
        732 F. App'x 624 (10th Cir. 2018) ..................................................................10, 11

*Doe v. Heil,*
        533 F. App'x 831 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 1309 (2014)............10

*Haig v. Agee,*
        453 U.S. 280 (1981)....................................................................... 4, 11-12, 13

*Hawes v. Club Ecuestre El Comandante,*
        535 F.2d 140 (1st Cir. 1976)....................................................................................7

*Heckler v. Ringer,*
        466 U.S. 602 (1984)................................................................................................3

*Kent v. Dulles,*
        357 U.S. 116 (1958)........................................................................................12, 13

*Koessel v. Sublette Cty. Sheriff's Dep't,*
 717 F.3d 736 (10th Cir. 2013) ...................................................................8

*M.A.K. Inv. Grp., Ltd. Liab. Co. v. City of Glendale,*
 897 F.3d 1303 (10th Cir. 2018) .................................................................9

*Maehr v. Koskinen,*
 664 F. App'x 683 (10th Cir. 2016) ...........................................................9

*McDonald v. City of Chicago,*
 561 U.S. 742 (2010).............................................................................5, 6

*Mohamed v. Holder,*
 266 F. Supp. 3d 868 ..........................................................................11, 14

*Moore v. Guthrie,*
 438 F.3d 1036 (10th Cir. 2006) ...............................................................10

*Nehme v. INS,*
 252 F.3d 415 (5th Cir. 2001) .....................................................................7

*Nelson v. Geringer,*
 295 F.3d 1082 (10th Cir. 2002) .................................................................7

*Obergefell v. Hodges,*
 135 S. Ct. 2584 (2015)..............................................................................11

*Onyx Props. Ltd. Liab. Co. v. Bd. of Cty. Comm'rs,*
 838 F.3d 1039 (10th Cir. 2016) .................................................................9

*Peterson v. Martinez,*
 707 F.3d 1197 (10th Cir. 2013) .................................................................6

*Pollack v. Duff,*
 793 F.3d 34 (2015)................................................................................5, 7

*Powers v. Harris,*
 379 F.3d 1208 (10th Cir. 2004) ...............................................................15

*Risenhoover v. Washington Cnty. Comm. Servs.,*
 545 F. Supp. 2d 885 (D. Minn. 2008).......................................................15

*Seegmiller v. LaVerkin City,*
 528 F.3d 762 (10th Cir. 2008) ...........................................................10, 11

*Soc. Sec. Law Ctr., LLC v. Colvin,*
  542 F. App'x 720 (10th Cir. 2013) ...................................................3

*United States v. Lipper,*
  1981 U.S. Dist. LEXIS 11766 (N.D. Cal. Mar. 25, 1981).....................16

*United States v. Yates,*
  746 F. App'x 162 (4th Cir. 2018) ............................................... 7-8

*Walker v.Tillerson,*
  2018 WL 1187599 (M.D.N.C. Mar. 7, 2018) ....................................15

*Yussuf Awadir Abdi v. Wray,*
  2018 U.S. Dist. LEXIS 68942 (D. Utah Apr. 20, 2018).......................10

*Zemel v. Rusk,*
  381 U.S. 1 (1965).....................................................................9

**Statutes**

22 U.S.C. § 2714 .........................................................................4

22 U.S.C. § 2714a ........................................................................4

26 U.S.C. § 6331 .........................................................................9

26 U.S.C. § 6334 .........................................................................9

26 U.S.C. § 7345 ................................................................ *passim*

26 U.S.C. § 7402 .....................................................................17, 18

28 U.S.C. § 1361 .........................................................................3

42 U.S.C. § 652 .........................................................................14

42 U.S.C. § 654(k) ......................................................................14

**Regulations**

22 C.F.R § 51 *et seq*...................................................................4

**Other Authorities**

First Amendment ......................................................................12, 13

Second Amendment ...................................................................................................5, 6

Fifth Amendment .........................................................................................1, 8, 9, 12, 17

Fourteenth Amendment .........................................................................................5, 6, 7, 8

The United States, the proper party acting on behalf of the Internal Revenue Service and the Department of State, submits this reply in support of its motion to dismiss plaintiff Jeffrey Maehr's suit.  (*See* Dkt. 32 (operative complaint); Dkt. 46 (motion to dismiss)).[1]

## I.   INTRODUCTION

Mr. Maehr has alleged that the government cannot use § 7345 to revoke the passport issued to him, because, in his view, he has a fundamental, almost inviolable, right to international travel.  There is a major flaw in this theory: as the United States explained in its opening brief, federal courts have repeatedly held that, unlike interstate travel, there is no fundamental right to international travel.  The right to international travel is a liberty interest protected by the Fifth Amendment's Due Process Clause, which can be subjected to reasonable restrictions within the bounds of due process.  Courts have repeatedly upheld reasonable restrictions on international travel, like the restriction found in § 7345.  To find for Mr. Maehr would be to go against the overwhelming weight of authority.

In his response, Mr. Maehr attempts new theories not alleged in the operative pleading. He asserts that he is bringing a mandamus claim, even though he has not and cannot plead mandamus's requirements.  He claims, for the first time, that § 7345 infringes on his rights under the Privileges and Immunities Clause in Article IV of the Constitution.  But he ignores extensive case law that shows that the clause protects against actions by the states, not the federal government.  His fallback is to suggest that the numerous cases holding that there is no unassailable right to international travel were wrongly decided.  He makes only a cursory effort

---

[1] Subsequent references to specific docket cites are to the file-stamped ECF page numbers, rather than internal page numbers.

to distinguish a closely analogous statute that allows the government to revoke the passports of people who owe relatively small amounts of child support.  Yet that statute sweeps far more broadly than § 7345, and has been consistently upheld.

He also discounts the numerous protections built into § 7345, calling them merely procedural.  He ignores that the statute's detailed framework targets only a limited class of egregiously delinquent taxpayers, in a manner that would survive even a heightened form of scrutiny.  And he continues to argue that Congress is constrained by the common law limitations courts have developed for the writ *ne exeat republica*, even though § 7345 operates differently, under different circumstances, and has never been applied to restrict Congress's authority to set different safeguards.  None of these efforts should succeed.  He cannot prevail, and the Court should dismiss his suit.

## II.   ARGUMENT

### A.  Mr. Maehr Has Not Properly Alleged A Claim for Mandamus Relief, And He Has Not Cured The Jurisdictional Defects In His Suit.

Section 7345 allows an aggrieved taxpayer to sue the United States in District Court.  26 U.S.C. § 7345(e).  For reasons that remain unclear, Mr. Maehr did not name the United States as a defendant.  Instead, he names Michael Pompeo in his official capacity as the Secretary of State.  *Cf.* 22 U.S.C. § 2714a(e)(3) (providing that the State Department cannot be liable in connection with a § 7345 certification).  Relatedly, it appears that Mr. Maehr does not wish to rely on § 7345(e)'s waiver of sovereign immunity.  This poses a problem: he must show that some other statute offers a waiver of sovereign immunity, and the operative complaint did not do so.  True, Mr. Maher's claims would fail regardless, but that does not excuse the error.

2

Mr. Maehr attempts to fix this problem in his response, by asserting that that the Court has mandamus jurisdiction over the Secretary, pursuant to 28 U.S.C. § 1361.  (Dkt. 52 at 10). The operative complaint does not mention § 1361 or mandamus.  It does seek "declaratory" relief (Dkt. 32 at 5), but that is not enough to plead a mandamus claim under federal law.

Mandamus is a "drastic" remedy that should "be invoked only in extraordinary circumstances."  *Soc. Sec. Law Ctr., LLC v. Colvin*, 542 F. App'x 720, 722 (10th Cir. 2013), *quoting Allied Chemical Corp. v. Daiflon, Inc*., 449 U.S. 33, 34 (1980).  Section 1361 is intended to provide a remedy only if a plaintiff has exhausted all other avenues for relief, and only if the named defendant owes plaintiff a clear, nondiscretionary duty.  *Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984); *Childs v. Weinshienk*, 320 F. App'x 860, 861 (10th Cir. 2009).  "The importance of the term 'nondiscretionary' cannot be overstated -- the judiciary cannot infringe on decision-making left to the Executive branch's prerogative.  The "ministerial-discretionary dichotomy which permeates the jurisprudence of mandamus is merely shorthand for the well-taken rule that to the extent a statute vests discretion in a public official, his exercise of that discretion should not be controlled by the judiciary.'"  *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F. 2d 564, 566 (10th Cir. 1981).  Mr. Maehr does not allege that he has exhausted all other methods for reversing his certification and becoming eligible for a passport once again, even though § 7345 provides mechanisms for doing so.  Nor does he show that the Secretary has a clear, non-discretionary obligation to reinstate his passport.

The Secretary of State is authorized by statute to revoke a passport previously issued to any individual certified under 26 U.S.C. § 7345 as having a seriously delinquent tax debt.  22 U.S.C. § 2714a(e).  The Department revoked the passport issued to Mr. Maehr because the IRS

3

had certified that he had seriously delinquent tax debt as per 26 U.S.C. § 7345.  The statutory

provisions make the Secretary of State's duty discretionary, stating that the Secretary "may"

revoke the passport of an individual certified as having a seriously delinquent tax debt.  Since

this duty is discretionary, mandamus is not an appropriate form of relief and this court lacks

jurisdiction over Plaintiff's mandamus claim.

Moreover, issuing a passport is, by its very nature, a matter over which the Department of

State exercises discretionary authority pursuant to 22 U.S.C. § 211a *et seq*., which provides that

"[t]he Secretary of State ***may*** grant and issue passports." (emphasis added); *see also Haig v.*

*Agee*, 453 U.S. 280, 295 n.26 (1981) (noting that use of the word "'may' expressly recognizes

substantial discretion"); *see also* 22 C.F.R. § 51, *et seq*. (providing the Department with

discretion to ask for additional evidence supporting an applicant's eligibility for a U.S. passport).

Pursuant to 22 U.S.C. § 211a, the Department of State has promulgated regulations for the

revocation of passports that it has issued.  *See* 22 C.F.R. § 51.62.  Because the Secretary of State

has discretionary authority, Mr. Maehr's mandamus claim fails.

### B.  The Privileges and Immunity Clause Does Not Apply To § 7345.

As Mr. Maehr tacitly recognizes, federal courts have overwhelmingly declined to find a

fundamental right to international travel.  However, he has a novel response: rather than focusing

on the recent case law, he argues that § 7345 "violates the Constitution's Article IV Section 2

Privileges and Immunities Clause" and scours cases from the nineteenth century for references to

travel rights.  (*See* Dkt. 52 at 12 *et seq*.).

The operative complaint did not assert a Privileges and Immunities claim.  Instead, Mr.

Maehr's theory was that the putative right to travel is a fundamental right, but he did not tether

4

the so-called right to any particular Constitutional provision, let alone the Privileges and

Immunities Clauses.  But even assuming his suit encompassed such a claim, it would fail,

because § 7345 is a federal statute, not a state action.  *See, e.g.*, *Pollack v. Duff*, 793 F.3d 34, 40-

41 (D.C. Cir. 2015) ("[T]he Privileges and Immunities Clause of Article IV does not constrain

the powers of the federal government at all."); *Bishop v. Okla. ex rel. Edmondson*, 447 F. Supp.

2d 1239, 1252 (N.D. Okla. 2006) (similar), *rev'd on other grounds*, 333 Fed. Appx. 361 (10th

Cir. 2009).

The Article IV, Section 2 Privileges and Immunities Clause, not to be confused with the

Privileges or Immunities Clause in the Fourteenth Amendment, provides that:

> "The Citizens of each State shall be entitled to all Privileges and
> Immunities of Citizens in the several States."

The Fourteenth Amendment, Section 1, provides:

> "All persons born or naturalized in the United States, and subject
> to the jurisdiction thereof, are citizens of the United States and of
> the State wherein they reside. **No State shall make or enforce any**
> **law which shall abridge the privileges or immunities of citizens**
> **of the United States**; nor shall any State deprive any person of
> life, liberty, or property, without due process of law; nor deny to
> any person within its jurisdiction the equal protection of the laws."
> (Emphasis added).

Although Mr. Maehr says he relies on the Article IV clause, he devotes much of his

briefing to the Fourteenth Amendment.  (*See, e.g.*, Dkt. 52 at 14-15 (arguing that "the original

purpose and intent of the Fourteenth Amendment's Privilege and Immunities Clause was to

secure and protect civil rights for all citizens (including African-Americans)" after the Civil

War.)  He cites Justice Thomas's concurring opinion in *McDonald v. City of Chicago*, 561 U.S.

742 (2010), which concerned a Second Amendment challenge to municipal gun restrictions.  The

*McDonald* plurality found that the Second Amendment was applicable against the states via the Fourteenth Amendment's Due Process Clause.  Justice Thomas agreed with the result, but reasoned that the right to keep and bear arms was a "privilege of American citizenship", and should be applied against the states under the Fourteenth Amendment's Privileges or Immunities Clause instead.  (*Id*. at 807).  Though the Supreme Court had limited the "privileges" protected under the Fourteenth Amendment in the famous *Slaughter-House Cases*, 83 U.S. 36 (1873), those cases were, in Justice Thomas's view, wrongly decided.

That said, Justice Thomas's concurrence is not the law.  Indeed, despite Mr. Maehr's approval of Justice's Thomas's concurrence, he does not actually argue that this Court must break with the *Slaughter-House Cases*.  His point seems to be only that there is some collection of important rights rooted in federal citizenship, and that this Court should infer that international travel is one such fundamental right.  The first point is non-controversial, or, at least, there is little dispute that Americans have certain fundamental rights (whether they are Fourteenth Amendment "Privileges or Immunities" or otherwise is a different question).  It is Mr. Maehr's claim that international travel is one of these rights that is flawed.  *Cf Peterson v. Martinez*, 707 F.3d 1197, 1215 (10th Cir. 2013) (rejecting inter-related right to travel and Privileges and Immunities claim because claim did not "implicate any of the privileges recognized previously by the Supreme Court.").  As discussed in the United States' opening brief and below, courts have repeatedly found there is no fundamental right to international travel.  But even if there were such a right, Mr. Maehr cannot state a Privileges and Immunities claim against the federal government.

The Fourteenth Amendment explicitly says that "[n]o *state* … shall abridge the privileges or immunities of citizens of the United States[.]" It is clearly inapplicable to federal actions.  Mr. Maehr does not say otherwise, and instead relies on the Article IV Privileges and Immunities Clause.  But courts have repeatedly rejected Privileges and Immunities claims brought against the federal government.  *See, e.g., Pollack*, 793 F.3d at 40-41 (2015).  That is because the Article IV provision was "designed to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned."  *Nelson v. Geringer*, 295 F.3d 1082, 1088-89 (10th Cir. 2002) (analyzing claim that Wyoming law limited Colorado residents' participation in Wyoming National Guard).  *Cf Nehme v. INS*, 252 F.3d 415, 430 n.118 (5th Cir. 2001) ("[T]he Privileges and Immunities Clause protects citizens of one state from abuses by other states, and does not address powers, such as the granting of citizenship, of the federal government."), *citing Nevada v. Watkins*, 914 F.2d 1545, 1555 (9th Cir. 1990) ("[T]he Privileges and Immunities Clause has been construed as a limitation on the powers of the States, not on … the federal government."); *Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 145 (1st Cir. 1976) ("Article IV, § 2 is a limitation on powers of states and in no way affects the powers of a federal district court.").

This result is hardly surprising, given the context.  Article IV is sometimes known as the "States' Relations Article."  *See Pollack*, 793 F.3d at 44.  Section 1 includes the well-known requirement that states give "Full Faith and Credit" to each other's judicial proceedings.  Section 3 provides for the admission of new states to the Union.  Section 2, the Privileges and Immunities Clause, likewise governs the states.  *See, e.g, United States v. Yates*, 746 F. App'x 162, 164 (4th Cir. 2018) ("[T]he Full Faith and Credit Clause and Article IV's Privileges and

Immunities Clause offer [defendants] no protection, as neither clause applies to federal statutes[.]'").

Indeed, at least one court has specifically rejected a "right to travel" suit founded on Article IV's Privileges and Immunities Clause. In *Robinson v. Huerta*, the plaintiff alleged that the Federal Aviation Administration had improperly revoked his commercial pilot's license and mechanic and ground instructor's certificates. 123 F. Supp. 3d 30, 44 (D.D.C. 2015). The court granted the FAA's motion to dismiss the action because, in part, Article IV's Privileges and Immunities clause limits the powers of states, "and [] thus provides no basis for [plaintiff's] right to travel claim in this case." *Id.* at 43-44. Mr. Maehr's Privileges and Immunities theory fails for the same reason.

### C.  Mr. Maehr Has Not Shown A Violation Of His Right To Substantive Due Process.

As the United States observed in its opening brief, the operative complaint does not clearly articulate a due process violation, whether under the Fifth or Fourteenth Amendments. In his response, Mr. Maehr argues that the passport revocation regime "violates substantive due process." (Dkt. 52 at 14 *et seq*.). This argument also turns on the notion that the so-called right to international travel is a bedrock principle to our system of government. It too fails.

#### 1)  *The Fifth Amendment Encompasses Both Procedural and Substantive Due Process.*

The Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law[.]" (The Fourteenth Amendment also has a due process clause, but that applies only to the states. *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013)). There are, of course, many circumstances where the federal

government can deprive an individual of liberty or property (or even life), so long as due process is afforded.  For example, in the tax context, the government can deprive taxpayers of their property by administrative levy, subject to very narrow exceptions, up to and including 100% of a taxpayer's Social Security payments.  *See* 26 U.S.C. §§ 6331 and 6334; *Maehr v. Koskinen*, 664 F. App'x 683, 684 (10th Cir. 2016).  The fact that the government must afford due process if it infringes on liberty or property interests does not mean the government cannot infringe upon those interests.  *See*, *e.g.*, *Zemel v. Rusk*, 381 U.S. 1, 12-14 (1965).

"Due process" has substantive and procedural components, which are analyzed separately.  *See*, *e.g.*, *Cummings v. Dean*, 913 F.3d 1227, 1237 (10th Cir. 2019).  Mr. Maehr says he does not challenge § 7345's procedural protections.[2]  Nor can he.  Procedural due process is "flexible[,] and calls for such procedural protections as the particular situation demands." *M.A.K. Inv. Grp., Ltd. Liab. Co. v. City of Glendale*, 897 F.3d 1303, 1308-09 (10th Cir. 2018).  However, the cornerstone of procedural due process is that the government provide notice of the deprivation, and at least some opportunity to challenge it.  *See*, *e.g.*, *Onyx Props. Ltd. Liab. Co. v. Bd. of Cty. Comm'rs*, 838 F.3d 1039, 1044 (10th Cir. 2016) (quotations omitted).  Mr. Maehr does not dispute that he received notice of the IRS's certification.  In fact, he appended it to an earlier pleading. (*See* Dkt. 1 at 5-6 (notice of IRS certification)).  Section 7345(e) provides an opportunity to challenge the certification.

---

[2] In addition to the other procedural protections the statute offers, the IRS provides various forms of administrative relief.  (*See* Dkt. 46 at 12-13).  The IRS has also publicized a program to expedite reversal of certification for taxpayers with imminent travel needs.  *See* https://www.irs.gov/newsroom/individuals-with-significant-tax-debt-should-act-promptly-to-avoid-revocation-of-passports (last viewed Aug. 8, 2019).

### 2) *Courts Analyzing Substantive Due Process Claims Must Determine Whether The Right At Issue Is Fundamental.*

Instead, Mr. Maehr argues that the government violated his rights to substantive due process.  (Dkt. 52 at *et seq*.).  Substantive due process protects individuals from "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  *Doe v. Heil*, 533 F. App'x 831, 841 (10th Cir. 2013) (quotation omitted), *cert. denied*, 134 S. Ct. 1309 (2014).  "The ultimate standard for determining whether there has been a substantive due process violation" is, in some sense "whether the challenged government action shocks the conscience of federal judges."  *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quotations omitted).

Courts hearing substantive due process claims first determine the nature of the right that the plaintiff says the government infringed.  *See, e.g.*, *Dawson v. Bd. of Cty. Comm'rs*, 732 F. App'x 624, 629 (10th Cir. 2018).  The type of right at issue determines the level of review courts give to the challenged law or action.  (*See* Dkt.  46 at 22); *see also Dawson*, 732 F. App'x at 629. In general, strict scrutiny applies to the most fundamental rights; otherwise, courts apply rational basis review.  *Id*.

Where, as here, a plaintiff suggests that the government has improperly invaded a protected liberty interest, courts have traditionally performed a two-step analysis.  First, they must carefully consider and describe the asserted fundamental liberty interest.  *Dawson*, 732 F. App'x at 629, *quoting Seegmiller v. LaVerkin City,* 528 F.3d 762, 769 (10th Cir. 2008); *see also Yussuf Awadir Abdi v. Wray*, 2018 U.S. Dist. LEXIS 68942, at *9 (D. Utah Apr. 20, 2018) (rejecting substantive due process claim rooted in right to travel).  Second, courts must decide whether the asserted liberty interest is "objectively, deeply rooted in this Nation's history and

tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Seegmiller*, 528 F.3d at 761. If so, it is deemed a fundamental right, and strict scrutiny applies. *See id.* Otherwise, it is not, and courts consider only whether the challenged statute serves a rational basis. Critically, the plaintiff bears the burden of proving that the liberty interest is fundamental. *Dawson*, 732 F. App's at 629.[3] Mr. Maehr has not carried that burden.

### 3) *Mr. Maehr's Response Does Not Show There Is a Fundamental Right To International Travel.*

Mr. Maehr asserts that the right to travel internationally is a fundamental right. He offers quotes from the Magna Carta; suggests that the numerous lower courts that have concluded there is no such right were simply wrong; and discusses the right to ***domestic*** travel. What he does not do is point to a single court that squarely held that there is any fundamental right to ***international*** travel equivalent to the right to domestic travel. If a right were so "deeply rooted in the Nation's history and tradition" that "neither liberty nor justice could exist without it," one might expect that at least a few courts would have recognized it. The very dearth of authority in Mr. Maehr's favor is at least some evidence that there is no such fundamental right.

Furthermore, the Supreme Court itself "made it plain that the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States." *Haig*

---

[3] The Supreme Court's landmark decision *Obergefell* has tended to expand the scope of that analysis. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015) ("History and tradition guide and discipline this inquiry but do not set its outer boundaries."). Courts now evaluate "any history and tradition of animus that motivates the legislative restriction on the freedom." *See, e.g.*, *Mohamed v. Holder*, 266 F. Supp. 3d 868, 876-79 (E.D. Va. 2017). However, Mr. Maehr does not suggest that § 7345 was motivated by any animus.

*v. Agee*, 453 U.S. 280, 306 (1981) (emphasis in original).  *See also Califano v. Aznavorian,* 439

U.S. 170, 176 (1978) ("[T]his Court has often pointed out the crucial difference between the

freedom to travel internationally and the right of interstate travel.  The constitutional right of

interstate travel is virtually unqualified… By contrast the 'right' of international travel has been

considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of

the Fifth Amendment.") (int'l quotations omitted).

      The Supreme Court's distinction in *Haig* between the right to domestic travel and the

liberty interest in international travel means, at the very least, that the two cannot be conflated.

Mr. Maher's general reliance, throughout his brief, on case law concerning interstate travel is

thus misplaced.  (*See, e.g.*, Dkt. 52 at 19 (analyzing *Crandall v. Nevada*, 73 U.S. 35 (1868),

which concerned restrictions on interstate travel in the form of a Nevada tax on persons leaving

the state)).  Mr. Maehr argues that the reasoning in *Haig* and similar cases is mere *dicta* that

misconstrues earlier Supreme Court cases.  (Dkt. 52 at 16-17).  However, the Supreme Court can

interpret its own rulings, and Mr. Maehr faces an uphill battle arguing that the Court erred in

*Haig* and *Aznavorian* when it differentiated between interstate and international travel.

      Moreover, as the United States has previously explained, the early Supreme Court

passport cases on which *Haig* and others rely implicated non-travel rights, perhaps those that are

among the most fundamental: First Amendment political freedoms.  (*See* Dkt. 46 at 23).  *Kent*

concerned the Secretary of State's denial of passports to suspected Communists "solely because

of their refusal to be subjected to inquiry into their beliefs and associations." *Kent v. Dulles*, 357

U.S. 116 (1958).  The Court specifically distinguished situations in which a citizen might lose a

passport for "engaging in conduct which would violate the laws of the United States."  *Id*. at 127;

*see also id.* at 130 ("We would be faced with important constitutional questions were we to hold that Congress … had given the Secretary authority to withhold passports to citizens because of their beliefs or associations.").  The Court's decision six years later in *Aptheker* is similar. *Aptheker v. Sec.'y of State*, 378 U.S. 500 (1964) (rejecting statute that prevented persons associated with Communist groups from obtaining passports).

Denying passports to individuals merely because they hold unpopular or controversial political beliefs unquestionably threatens fundamental First Amendment rights.  Denying passports to a carefully limited class of persons who owe substantial tax debts that the government has been unable to collect through usual administrative channels (and who have already had the opportunity to challenge both the amount of the debt and the IRS's collections methods) does not.

Mr. Maehr further observes that in subsequent cases, like *Haig*, the Supreme Court upheld the denial of passports on national security or foreign policy grounds.  He suggests that collecting seriously delinquent tax debts is not as important as national security or foreign policy, so § 7345 is unjustified.  (*See* Dkt. 52 at 29).  It is true that the Supreme Court has not had a recent opportunity to decide passport questions outside the national security or foreign policy context.  But that does not mean the Supreme Court must reject any future restrictions, unless they are based on those interests.  And although there is no Supreme Court case directly on point, this Court does not decide in a vacuum.  Numerous federal courts have had the opportunity to consider international travel restrictions.  This Court should adopt their understanding of the Supreme Court's travel precedents, not Mr. Maehr's.

13

As the United States has shown, courts have upheld a broad range of restrictions on international travel, which shows it cannot be the fundamental right Mr. Maehr claims.  (*See*, *e.g.*, Dkt. 46 at 20).  Courts generally apply rational basis review to such restrictions.  *See Aznavorian*, 439 U.S. at 176-77  ("[L]egislation which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel …") (citations omitted); *see also*, *e.g.*, *Mohamed v. Holder*, 266 F. Supp. 3d 868, 876-79 (E.D. Va. 2017) ("[T]here is very little jurisprudential basis upon which to recognize a fundamental right to international travel; and under the current state of the law, the constitutionality of the No Fly List based on its effect on any right to international travel must be assessed under the rational basis test).  Mr. Maehr's response largely ignores these precedents. He does address, briefly, the Title 42 analog to § 7345, under which individuals who owe only $2,500 in child support payments can lose their passports.  *See* 42 U.S.C. §§ 652(k) and 654(31). (*See* Dkt. 46 at 20-21 (describing the program in more detail)). But his attempts to distinguish it are unpersuasive.

Mr. Maehr begins with a questionable characterization of the law: he says that under 42 U.S.C. § 652(k), parents who owe "large child support debts" may lose their passports.  (Dkt. 52 at 33).  However, the statutory threshold for delinquent child support payments is only $2,500, a mere 5% of § 7345's $50,000 floor (which increases with inflation under § 7345(b) and (f)).  The amount matters.  Mr. Maehr stresses that to the extent the child support regime is constitutional (which he disputes), it is only because Congress and the courts have balanced the well-being of children against their parents' ability to travel, and found for the children.  But Congress also struck a balance in § 7345, weighing the incursion on liberty against the unquestionable need for

14

revenue, and set the threshold far higher.  Whether or not the Court would strike the same balance, it should tread carefully when second-guessing Congress's decisions.  *See Powers v. Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004); (*see also* Dkt. 46 at 24).

In any event, Mr. Maehr has not shown why the Court should disregard the weight of authority upholding the child support regime.  He suggests many of the challenges have been *pro se*.  (Dkt. 52 at 34).  If the right to international travel is the deeply rooted, fundamental right Mr. Maehr claims, courts are certainly capable of recognizing it, even if inartfully pled.  He also argues that the cases have focused on procedural, rather than substantive due process grounds. (*Id*.)  That is hardly universal.  *See, e.g.*, *Risenhoover v. Washington Cnty. Comm. Servs.*, 545 F. Supp. 2d 885, 890-91 (D. Minn. 2008) (rejecting equal protection and substantive due process challenges); *see also Walker v. Tillerson*, 2018 WL 1187599 (M.D.N.C. Mar. 7, 2018).   But if the litigants focused on procedural due process, it only makes sense: substantive due process requires recognition of fundamental rights of the highest order, and litigants stood little chance if they rested their claims on the supposed right to international travel alone.

That said, even if the ability to travel abroad was the equivalent to the right to domestic travel, the statute would survive heightened scrutiny.  Mr. Maehr argues that § 7345's detailed framework offers only procedural protections.  (Dkt. 52 at 34).  That is not correct.  The statute's framework limits who can be certified, and for what, and under what circumstances.  It does not create "arbitrary" classifications, or invade the liberty of delinquent taxpayers with small debts, or whose debts are still properly disputed (assuming dispute rights are not exhausted).  It applies only where usual administrative processes have not succeeded.  It is a collections tool, not a punishment: even taxpayers who owe more than $50,000 can retain their passports if they are

15

negotiating with the IRS, or are making good faith compliance efforts, and the deprivation is not permanent.  Furthermore, it is not mere rhetoric to say taxes are the lifeblood of government, and their "prompt and certain availability an imperious need."  *Bull v. United States*, 295 U.S. 247, 259 (1935).  The United States cannot fund the child welfare programs Mr. Maehr extols, or the national security interests he finds similarly compelling, without revenue.  Congress has a compelling need to collect revenue, and to not allow especially non-compliant taxpayers to ignore their debts.

In the end, Mr. Maehr's assertion that § 7345 offends substantive due process is simply a more specific way of saying international travel is a fundamental right akin to domestic travel. This Court would be staking new ground if it were to agree with him.

### D.  The Writ *Ne Exeat Republica* And § 7345 Are Different Procedural Tools.

Mr. Maehr maintains that the government cannot restrict passports under § 7345 unless it can show the predicates for the common-law writ *ne exeat republica*.  (Dkt. 32 at 29 *et seq*.) This is a red herring.  It is certainly true that courts can, and have, prevented delinquent taxpayers from traveling abroad under the writ.  They have gone farther: under the auspices of the writ, courts have restricted taxpayers' domestic and local travel, and have gone so far as to order literal imprisonment.  *See, e.g.*, *United States v. Lipper*, 1981 U.S. Dist. LEXIS 11766, at *14 (N.D. Cal. Mar. 25, 1981) (requiring that taxpayer remain in the judicial district); (*see also* Dkt. 46 at 25 (providing additional cases)).

These are obviously dramatic incursions on taxpayers' Fifth Amendment liberty interests, and the clear right to domestic travel.  Courts have naturally developed strict requirements for imposing the writ.  But the fact that courts have developed one set of safeguards hardly means that those are the only safeguards that could afford due process, and Mr. Maehr does not point to any opinion that suggests that Congress would be limited to the specific safeguards courts have developed for the writ.

Indeed, there is no reason those safeguards would be the same.  As Mr. Maehr recognizes in his response, courts' ability to issue the writ is codified in 26 U.S.C. § 7402(a).  (Dkt. 52 at 36).  That provision gives courts broad, generalized powers to issue such orders and writs as may be "necessary or appropriate" to enforce tax laws.  The writ *ne exeat* is just one example in a long and non-exhaustive list.  Mr. Maehr asserts that the "passport revocation regime" in § 7402(a) and § 7345 are "functionally identical[.]"  (Dkt. 52 at 36).  His reasoning appears to be that if the writ and § 7345 both allow courts to restrict international travel, they must operate in the same manner.  But it would make little sense for Congress to pass § 7345 if it was "identical" to § 7402(a).  Instead, § 7402(a) specifically provides that the remedies it lists "are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."  Nothing in the text restricts Congress's ability to craft other remedies, or limits courts' ability to enforce those other remedies.

Moreover, § 7345 is clearly not identical to § 7402.  As outlined in the United States' opening brief, § 7345's detailed provisions work in conjunction with other tax laws, and are carefully tailored to address only a precisely defined set of non-compliant taxpayers.  (*See generally* Dkt. 46 at 10-12).  Among other protections, the taxpayers must have had the

17

opportunity to challenge their debts thorough judicial process.  The IRS must have already attempted administrative collections, *i.e.*, liens or levies, processes that generally provide additional notices and rights to challenge the IRS. (If a taxpayer properly challenges a lien or levy, the IRS cannot certify the taxpayer until the process has resolved.)  The balance due must exceed $50,000, indexed for inflation, and even taxpayers who owe more than $50,000 cannot be certified if they are making payments on formal installment plan or makes a formal offer to compromise the debts.  Nor is certification permanent: it must be reversed if various conditions are met, or if the collections statute of limitations expires.  By contrast, § 7402(a) does not provide the other explicit protections in § 7345.  It merely directs courts to issue relief as is "necessary or appropriate." Courts have developed the common law applicable to the writ, to determine when passport restriction might be "appropriate," in the absence of more specific legislative direction.  But Congress can offer more specific direction in other contexts if it chooses, and in § 7345 it has done so.

## III.    CONCLUSION

For the reasons set forth in the United States' opening memorandum and above, Mr. Maehr's suit against the government should be dismissed with prejudice.


DATED: August 8, 2019

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/E. Carmen Ramirez*
E. CARMEN RAMIREZ
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683

18

Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-2885
FAX: (202) 307-0054
Email: E.Carmen.Ramirez@usdoj.gov

Of counsel:

JASON R. DUNN
United States Attorney

*Attorneys for the United States*

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing is made this 8th day of August,

2019, via ECF.

> */s/ E. Carmen Ramirez*
> E. Carmen Ramirez
> Trial Attorney, Tax Division
> U.S. Department of Justice