IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02948-PAB-NRN

JEFFREY T. MAEHR,

Plaintiff,

v.

UNITED STATES Department of State, including Secretary of State Mike Pompeo, in his official capacity,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT (DKT. #46)**

---

**N. Reid Neureiter
United State Magistrate Judge**

This case is before the Court pursuant to the Order (Dkt. #47) issued by Chief Judge Philip A. Brimmer referring Defendant United States' Motion to Dismiss Plaintiff's Amended Complaint. Dkt. #46. The Court has carefully considered the motion, response (Dkt. #52), and reply. Dkt. #53. On September 12, 2019, the Court heard argument on the motion. *See* Dkt. #54. The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and recommends that Defendant's Motion to Dismiss be granted. This matter involves the constitutionality of a federal statute that authorizes the revocation of the passport of American citizens found to be seriously delinquent in their payment of income tax to the Internal Revenue Service. I find the statute at issue constitutional as applied to Mr. Maehr.

## BACKGROUND

### I. Procedural History

Mr. Maehr initiated this action by filing pro se a pleading titled "D. Statement of Claims – U.S. District Court, Colorado." Dkt. #1. On November 23, 2018, Mr. Maehr filed an amended complaint. Dkt. #6. On December 20, 2018, Magistrate Judge Gordon P. Gallagher ordered Mr. Maehr to file a second amended complaint to clarify his claims. On January 23, 2019, Mr. Maehr filed a second amended complaint (Dkt. #13) asserting two claims for relief: first, that the State Department violated his right to due process by revoking his passport before the issue of whether he has a seriously delinquent tax debt has been resolved; and second, against the United States Congress. Judge Gallagher dismissed Mr. Maehr's claim against the United States Congress leaving Mr. Maehr's claim against the State Department. Dkt. #14. Mr. Maehr contends that the law requiring the IRS to transmit certification of a seriously delinquent tax debt to the Secretary of State for action with respect to denial, revocation, or limitation of a passport, is unconstitutional. *See* 26 U.S.C. § 7345 & 22 U.S.C. § 2714a.

This Court appointed counsel to represent Mr. Maehr on March 20, 2019, and an Amended Complaint (Dkt. #32), which is the operative complaint here, was filed on April 23, 2019.[1]

### II. Mr. Maehr's Allegations

The IRS assessed Mr. Maehr with a tax deficiency for tax years 2003 through 2006 of approximately $250,000. Mr. Maehr has been litigating the validity of his tax

---

[1] The Court is very appreciative of excellent work of pro bono counsel for Mr. Maehr from the Polsinelli law firm in clarifying the difficult constitutional issues presented in this case of first impression.

liability for many years, and before many different courts. *See* Dkt. #46 at 1 n.2 (collecting cases). In this lawsuit, Mr. Maehr does not concede or challenge the validity or accuracy of the tax assessment process, or the Government's right or ability to collect this alleged debt from him. Instead, Mr. Maehr challenges the Government's right and ability to collect his alleged tax debt by depriving him of his constitutional right to travel internationally, which Mr. Maehr contends is a fundamental right.

Specifically, Mr. Maehr is challenging the Government's revocation of Mr. Maehr's passport under the Fixing America's Surface Transportation Act, 26 U.S.C. § 7345 ("FAST"). This relatively new statute directs the IRS to identify taxpayers who meet certain criteria for "seriously delinquent tax debt," and then certify the identities of those taxpayers to the State Department. The State Department then, under 22 U.S.C. §§ 2714a(e)(1)(A) & (2)(A), "shall not issue a passport to any individual who has seriously delinquent tax debt" and "may revoke a passport previously issued to any individual" who has been certified by the IRS.

Here, the State Department revoked Mr. Maehr's passport after the IRS certified that Mr. Maehr has a seriously delinquent tax debt. Dkt. #32 at ¶¶ 17-18 & Ex. 1. The State Department's passport revocation letter ordered Mr. Maehr to surrender his passport to the State Department and advised Mr. Maehr that he may re-apply for a passport once the IRS certifies that he has paid the alleged tax debt. *Id.* Mr. Maehr surrendered his passport and states that he is now prohibited from travelling internationally.[2] *Id.* ¶¶ 19-20.

---

[2] Mr. Maehr suggests that because of the implementation of the REAL ID requirements, which would require residents of states that have not complied with the REAL ID requirements traveling by airplane within the United States to use a passport, his right to

3

Mr. Maehr asserts three claims for relief, all arising from the State Department's decision to revoke his passport on December 4, 2018. First, Mr. Maehr seeks a declaratory judgment that the passport revocation regime under § 7345 is unconstitutional unless the common law constraints applied to the Government's use of a writ *ne exeat republica*[3] are also applied to a decision to revoke a passport. Mr. Maehr argues that § 7345 is unconstitutional as applied to him because the Government cannot establish, as required for a writ *ne exeat republica*, that Mr. Maehr intends to secrete assets abroad or that Mr. Maehr has assets abroad that he refuses to repatriate and use to pay his alleged tax debt.

In his second claim for relief, Mr. Maehr seeks a mandatory injunction requiring the State Department to reverse its December 8, 2018 decision to revoke his passport. Dkt. #32 at ¶35.

Finally, Mr. Maehr alleges that the Government's defense of its allegedly unconstitutional application of § 7345 is without substantial justification, and Mr. Maehr is accordingly entitled to an award of attorney fees and costs incurred by Mr. Maehr under the Equal Access to Justice Act, 28 U.S.C. § 2412.

### III. FAST Statute Legislative History

Congress enacted 26 U.S.C. § 7345 in late 2015 after considering for several years the issue of passport restrictions to increase tax compliance. *See* Fixing

---

interstate travel may be implicated as well. However, Mr. Maehr does not allege that he is currently prevented from interstate travel. As such, the Court will consider only the impact on Mr. Maehr's right to international travel.

[3] A writ of *ne exeat republica*, codified at 26 U.S.C. § 7402(a), authorizes federal courts to issue a writ to prevent a judgment debtor from leaving the country in order to avoid payment of the debt. The government is required to establish certain predicates before a writ will issue. *See also United States v. Shaheen*, 445 F.2d 6 (7th Cir. 1971).

America's Surface Transportation Act, § 32101(a), Pub. L. No. 114-94, 129 Stat. 1312, 1729 (2015) (the "FAST Act"). In 2011, the Governmental Accountability Office ("GAO") provided a research report on the issue in response to Congressional committee requests. *See* GAO-11-272, Federal Tax Collection: Potential for Using Passport Issuance to Increase Collection of Unpaid Taxes (Mar. 2011) at 4.3. The GAO reported that, as of September 30, 2008, the State Department had issued passports to over 224,000 individuals who owed over $5.8 billion in taxes. *Id.* at 2. The GAO observed that legislation tying passports to tax compliance could help generate substantial revenues, and "increase tax compliance for tens of millions of Americans[.]" *Id.* at 16. Such legislation could impact not only those individuals who already had tax debts, but also "serve as an incentive to individuals wishing to obtain passports to comply with their tax obligations, thus reducing the level of tax delinquencies and promoting compliance." *Id.*

In 2015, the Senate Finance Committee noted that "the amount of unpaid Federal tax debts continues to present a challenge to the IRS[,]" and that "a significant amount of unpaid Federal tax debt is owed by persons to whom passports have been issued." Sen. Rep. 114-45 at 57. The committee recognized that federal law permitted the State Department to deny or revoke passports for various reasons, but the Department did not have authority to consider federal tax debts. *Id.* The committee reasoned that "that tax compliance will increase if the issuance of a passport is linked to payment of tax debts." *Id.* at 57. It also considered cost and revenue findings from the Congressional Budget Office and the Joint Committee on Taxation, which estimated

5

that such legislation could increase revenues by about $400 million between 2016 and 2025. *Id.* at 63.

The Senate and the House both approved versions of the bill. A House conference report reconciling the two echoed the Senate committee's concern that the State Department had authority to restrict passports for child support debts of over $2,500, but not tax debts. H. Rep. 114-357 at 530. However, Congress recognized the need to build in taxpayer protections by carefully defining "seriously delinquent tax debt" and allowing revocation "only after the IRS has followed its examination and collection procedures under current law and the taxpayer's administrative and judicial rights have been exhausted or lapsed." *Id.* at 531-32.

## IV.     FAST Statute

Under FAST, the IRS is required to certify that a taxpayer meets the criteria for "seriously delinquent tax debt." The statute directs the Secretary of the Treasury to inform the State Department of the certification. 26 U.S.C. § 7345(a). The statute defines "seriously delinquent" tax debt to include debts of $50,000 or more, indexed for inflation. See *id* §§ 7345(b) and (f).

Before the IRS can certify a tax debt, it must be assessed, *id.* § 7345(b)(1)(A), which means the tax liability must be formally recorded. *Id.* § 6203. For purposes relevant here, a tax liability will not be recorded by the IRS until the amount of the liability has been determined through an administrative process that provides the taxpayer with notice and an opportunity to challenge the IRS's position. That process includes the right to petition the United States Tax Court for a redetermination (without having to pay the disputed amount first), and the right to appeal an adverse Tax Court

6

decision to the Court of Appeals for the relevant circuit. *See id.* §§ 6213(a) and 7482. The IRS generally cannot make an assessment until the taxpayer's time to petition the Tax Court has lapsed, or, if the taxpayer does petition the Tax Court, the decision has become final. *See id.* §§ 6213(a) (providing timelines) & 6215.

In addition, before the IRS can certify that a taxpayer has seriously delinquent debts, the IRS must attempt to collect the debt through a specific administrative process. It must file a lien notice pursuant to 26 U.S.C. § 6323 or make a levy pursuant to 26 U.S.C § 6331. *See id.* § 7345(b)(1)(C). If the IRS records a lien or makes a levy, it must generally provide the taxpayer an opportunity to challenge the notice or levy administratively, separate and apart from the taxpayer's right to challenge the underlying debt. *See id.* §§ 6320 and 6330 (notice and hearing procedures for liens and levies, respectively). These taxpayer challenges are sometimes known as "collections due process," or "CDP," proceedings. If the taxpayer chooses to exercise CDP rights, the IRS cannot certify the taxpayer until the process has concluded. *Id.* §§ 7345(b)(1)(c)(i) (right to challenge lien notice, under 26 U.S.C. § 6320) and 7345(b)(2)(B)(i) (right to challenge levy, under 26 U.S.C. § 6330).

The IRS cannot issue a certification if the taxpayer is paying down the debt under a payment plan or settlement agreement, even if the taxpayer still owes more than the threshold amount. *Id.* § 7345(b)(2)(A). Subsection(b)(2)(A) protects taxpayers who may never pay their entire obligation if they are making payments on a valid offer in compromise pursuant to 26 U.S.C. § 7122.9

Certification is not permanent. If the debt is satisfied (whether because the taxpayer pays it, or because the IRS has succeeded in collecting it through its own

efforts), the IRS must notify the State Department. *See id.* § 7345(c)(2)(A). The same is true if the debt becomes unenforceable, i.e., the statute of limitations for collections has run. *Id.* The taxpayer can also obtain reversal by seeking "innocent spouse" relief under 26 U.S.C. § 6015, or entering into an approved payment plan, even if the debt remains above the statutory threshold. *See id.* §§ 7345(c)(2)(B) & (C). Relatedly, the statute provides a right to challenge erroneous certifications in federal district court (as Mr. Maehr has done) or in the United States Tax Court, and requires that the IRS provide notice of the certification and the right to challenge it. *See id.* §§ 7345(d) & (e).

Finally, even if an individual has been certified, the State Department may issue a passport "in emergency circumstances or for humanitarian reasons," or to allow a taxpayer who is overseas to return home. 22 U.S.C. §§ 2714a(e)(1)(B) and (e)(2)(B).

**ANALYSIS**

**I.     Jurisdiction**

The United States argues that Mr. Maehr's Amended Complaint suffers from a jurisdiction defect, arguing that 28 U.S.C. § 1331 does not waive the government's sovereign immunity absent a waiver of sovereign immunity found in another statute. *See Merida Delgado v. Gonzalez*, 428 F.3d 916, 919 (10th Cir. 2005). Mr. Maehr, however, argues that this is, at its core, a mandamus action, seeking relief based on rights granted under the United States Constitution. The mandamus statute (cited by Mr. Maehr in his response to the Government's motion to dismiss but not in his Amended Complaint[4]), 28 U.S.C. § 1361 "provides federal district courts with original

---

[4] At oral argument and in his response to the Government's motion to dismiss, Mr. Maehr offered to amend his complaint to address the Government's assertions that he did not clearly allege the basis for subject matter jurisdiction. The Court does not

8

jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1244–45 (10th Cir. 2007). *See also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1234 (10th Cir. 2005) (mandamus remedy applied "to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity"). The Court agrees that the relief sought here is generally in the nature of a mandamus action. Therefore, the Court finds it has subject matter jurisdiction.

The Government also argues that because the FAST Act specifically provides that the State Department "shall not be liable to an individual for any action with respect to a certification" by the IRS, 22 U.S.C. § 2714(e)(3), the State Department is not a properly named defendant. Instead, the Government argues, Mr. Maehr is required to name the "United States" as the defendant for any challenges to certification by the IRS. *See id.* § 7345(e). However, as outlined above, Mr. Maehr is not challenging the certification by the IRS. Rather, Mr. Maehr seeks an order that the State Department's decision to revoke his passport is unconstitutional and therefore void. As such, the Court finds that the United States Department of State is a proper defendant. Nevertheless, to the extent the "United States" should be a named Defendant, the Court recommends the caption be amended to include the "United States of America" as a Defendant. This is, at best, form over substance.

---

recommend that Mr. Maehr be required or allowed to amend his complaint because doing so would be futile for the reasons stated in this Recommendation. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("[T]he district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint.").

9

## II.     United States' Motion to Dismiss (Dkt. #46)

The Government moves for dismissal of Mr. Maehr's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Government argues that the Amended Complaint fails because Mr. Maehr cannot sufficiently allege that the FAST statute is an impermissible restriction on any fundamental constitutional right.

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, legal conclusions are not presumed to be true. *Khalik v. United Airlines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.

2007). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).

Here, Mr. Maehr's Amended Complaint is not lacking in factual allegations, nor is there any dispute relating to the pertinent facts. Rather, assuming all of the factual allegations are true, this Court finds that the State Department's revocation of Mr. Maehr's passport was not unconstitutional, and therefore recommends that the Government's Motion to Dismiss be granted.

**A.     Mandamus**

The granting of mandamus relief is a matter of judicial discretion, but a plaintiff must first show eligibility by establishing "(1) that he has a clear right to relief, (2) that the [defendant's] duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy."[5] *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005). *See also Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990) (For mandamus to issue, the petitioner "must also show that his right to the writ is clear and indisputable.") (internal quotations omitted). "[M]andamus is an extraordinary

---

[5] The Government argues that Mr. Maehr has not exhausted his available remedies under the FAST statute, which provides a mechanism for a certified taxpayer to challenge the IRS's decision. However, Mr. Maehr argues he is not challenging the IRS's certification, but the State Department's revocation of his passport, and therefore the FAST statute provision that allows challenges to the IRS's decision is not applicable here. The Court agrees. The letter from the State Department to Mr. Maehr advises him that "there is no administrative or appeal before the Department of State," (Dkt. #32-1), and the Government does not argue that Mr. Maehr has any other avenue by which to challenge the State Department's decision to revoke his passport.

remedy that is granted only in the exercise of sound discretion." *Miller v. French*, 530 U.S. 327, 339 (2000) (internal quotations omitted).

Here, Mr. Maehr seeks a writ ordering the State Department and the Secretary of State Mike Pompeo to nullify the decision to revoke Mr. Maehr's passport pursuant to 22 U.S.C. § 2714a without proving the requirements of *ne exeat republica*.

Under the first requirement, to show that he has a clear right to relief, Mr. Maehr has the burden of establishing that the revocation of his passport is a violation of his constitutional right to travel. He alleges that the right to international travel is a fundamental right under the constitution that cannot be deprived by the Department of State solely on the basis of the IRS certification under FAST. He argues that this right is protected by the Privileges and Immunities Clause, the Due Process Clause of the Fifth Amendment, and Supreme Court precedent. The Court will address each in turn.

### B. Privileges and Immunities

Mr. Maehr first argues that the Privileges and Immunities Clause in Article IV, Section 2 of the Constitution prevents Congress from restricting the right to international travel. Mr. Maehr acknowledges that there is no direct precedent to support his argument but argues that the right can be newly recognized as a constitutional right that stems from national citizenship.

According to Mr. Maehr, the Supreme Court left this possibility open when it provided a nonexhaustive list of civil rights protected by the Privileges and Immunities clause, *see Twining v. New Jersey*, 211 U.S. 78 (1908), and later added the right "to carry on interstate commerce," *Crutcher v. Commonwealth*, 141 U.S. 47, 57 (1891), and the right to own real property, *Oyama v. California*, 332 U.S. 633 (1948). Mr. Maehr

argues that the right to travel internationally has been recognized by the Supreme Court as a "right of constitutional dimension." It is true that the Supreme Court described the right to international travel as a "constitutional liberty closely related to rights of free speech and association," *Aptheker v. Secretary of State*, 378 U.S. 500, 517 (1964), relying on a Supreme Court opinion issued several years earlier:

> The right to travel is a part of the "liberty" of which the citizen cannot be deprived without the due process of law under the Fifth Amendment. . . . Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values.

*Kent v. Dulles*, 357 U.S. 116, 125-26 (1958). However, as outlined below, the subsequent Supreme Court authority that addresses the right to international travel does so in the context of substantive due process under the Fifth Amendment and distinguishes the right to international travel from the right to interstate travel, which is a well-established fundamental right.

Accordingly, based on the weight of authority, this Court declines to expand on the list of rights recognized by the Supreme Court as protected by the Privileges and Immunities Clause to include the right to international travel. *See, e.g., Washington v. Glucksberg,* 521 U.S. 702, 720 (1997) (referring to the recognition of a new liberty interest protected by Due Process, stating that courts must "exercise the utmost care" when "asked to break new ground in this field").

### C. Substantive Due Process

Having found that the right to international travel is not a right protected under the Privileges and Immunities Clause, this Court turns its analysis to that of the protection of the right to international travel afforded under the Due Process Clause of the Fifth

Amendment, which guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

Here, Mr. Maehr asserts that the Department of State's revocation of his passport fails to afford him with substantive due process as required under the Fifth Amendment. Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 732 F. App'x 624, 629 (10th Cir. 2018), *cert. denied sub nom. Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 139 S. Ct. 862 (2019) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)) (citation and internal quotation marks omitted). The Supreme Court has carefully delineated fundamental rights and applies strict scrutiny to legislation infringing on those rights. *Obergefell v. Hodges*, — U.S. ——, 135 S. Ct. 2584, 2597 (2015) (noting that the "fundamental liberties protected" by the Due Process Clause "include most of the rights enumerated in the Bill of Rights" as well as "certain personal choices central to individual dignity and autonomy."). "The Court applies rational basis review to non-fundamental rights, precisely because they are non-fundamental." *Dawson*, 732 F. App'x at 629.

The substantive due process inquiry thus starts by first defining the "type" of right at stake. *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997)). Once that baseline is established, the Court applies the level of review that corresponds to the right identified. *Dawson*, 732 F. App'x at 629.

The 10th Circuit has described the analysis as requiring that the Court first "carefully describe the asserted fundamental liberty interest," and second,

> decide whether the asserted liberty interest, once described, is objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed, which would render the liberty interest a fundamental right.

*Id.* (citing *Seegmiller v. LaVerkin City*, 528 F.3d 762, 769 (10th Cir. 2008) and *Glucksberg*, 521 U.S. at 721 & 770) (citations and internal quotation marks omitted).

Here, Mr. Maehr alleges that the right to international travel is a fundamental right objectively and deeply rooted in the nation's history, citing the 1958 Supreme Court opinion in *Kent v. Dulles*, in which the Court discussed the right to travel in general as a right that emerged at least as early as the Magna Carta. 357 U.S. at 125. Mr. Maehr urges this Court to follow the language in *Kent v. Dulles* as controlling and ignore dicta from the Supreme Court in *California v. Aznavorian*, which distinguished the right to interstate travel from the right to international travel:

> [T]he "right" of international travel has been considered to be no more than an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment. As such this "right," the Court has held, can be regulated within the bounds of due process. . . . Thus, legislation which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel.

439 U.S. 170, 176-77 (1978). Mr. Maehr also argues that *Aznavorian's* dicta is the source in subsequent, wrongly-decided opinions by lower courts, and that the courts should have followed *Kent v. Dulles* and recognized the right to international travel as a fundamental right.

However, as the Government points out, the Supreme Court has a history of upholding restrictions on citizens' international travel in the interests of foreign affairs and national security. *See, e.g., Regan v. Wald*, 468 U.S. 222, 242-44 (1984) (upholding regulations "preventing travel to Cuba by most American citizens"); *Haig v.*

15

*Agee*, 453 U.S. 280, 293 (1981) ("The history of passport controls since the earliest days of the Republic shows congressional recognition of Executive authority to withhold passports."). Moreover, even after *Aznavorian*, the Supreme Court has indicated that there is no fundamental right to international travel. *See Haig*, 453 U.S. at 307 (rejecting the argument that the right to international travel is equivalent to the constitutional right to interstate travel, noting that the Supreme Court "has often pointed out the crucial difference between the freedom to travel internationally and the right of interstate travel").

Following the Supreme Court's lead, lower courts have applied rational basis review to restrictions on international travel. *See Eunique v. Powell*, 302 F.3d 971, 972–74 (9th Cir. 2002); *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001). Both of these cases involved a review of the revocation of passports belonging to parents who owe back child support. Mr. Maehr contends that the FAST statute is distinguishable from the child support statute because that type of debt—child support—is not an ordinary debt, as distinguished from the tax debt owed by Mr. Maehr, and serves a more compelling government interest—child welfare—that can justify the "extreme measure" of passport revocation. The Court is not convinced. The collection of significant amounts of seriously delinquent tax debt is an important and compelling governmental interest. *Bull v. United States*, 295 U.S. 247, 259 (1935) ("[T]axes are the lifeblood of government, and their prompt and certain availability an imperious need.").

Here, Mr. Maehr contends that the Government interests advanced by the FAST statute are not substantial enough to justify the revocation of his passport. The Government maintains that the right to international travel is a liberty that is subject to

16

reasonable governmental regulation, which the FAST statute is. *See Haig*, 453 U.S. at 306 (1981) (noting that "the freedom to travel abroad . . . is subordinate to national security and foreign policy considerations" and "as such, it is subject to reasonable government regulation."). The Government argues that the federal interests served by the FAST statute are compelling enough, and the statutory scheme is narrow enough, to qualify as "reasonable government regulation."

In terms of the traditional substantive due process test, the Government concedes that the right to travel internationally is a protected liberty interest, but argues that it is not a fundamental right, such that the Government can restrict international travel so long as there is a rational basis for the restriction. There is no doubt that the FAST legislation, the purpose of which is to enforce the Tax Code and raise revenues, is a legitimate legislative action that satisfies the rational basis test. Moreover, the Court finds that even if strict scrutiny were to apply, the Government has advanced an important and substantial reason for the FAST legislation, and that the statute is narrowly tailored to apply only to specifically defined, "seriously delinquent" taxpayers. To this extent, the Court finds the FAST statute constitutional. The legislation advances an important and substantial governmental objective: the collection of taxes from seriously delinquent taxpayers. It limits the right to travel only after giving fair notice and giving the delinquent taxpayer numerous other methods to address the tax delinquency.

### D. Writ *Ne Exeat Republica*

Mr. Maehr also argues that even if the right to travel internationally is not a fundamental right, the Government cannot use such extreme measures to coerce debtors to pay what Mr. Maehr calls "ordinary debt." Mr. Maehr argues that because

basic principles of Anglo-American law do not allow courts to use extraordinary equitable powers to coerce payment of debt, the Government cannot compel payment using the FAST statute's passport revocation "regime."

Mr. Maehr asserts that the revocation of a passport, without a showing as required under writ *ne exeat republica,* exceeds the bounds of due process because it "collects debts by abridging debtors' constitutional rights as a means of coercing payment." Dkt. #52 at 29. The predicates for the common law writ *ne exeat republica,* codified at 26 U.S.C. § 7402(a), require the government to show that a delinquent taxpayer is attempting to secrete assets abroad or is refusing to repatriate assets that can be used to pay the tax debt. *See, e.g., United States v. Shaheen*, 445 F.2d 6 (7th Cir. 1971). Section 7402(a) states:

> The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

The Government argues that this statute is not applicable to the revocation of passports by the State Department under FAST, and that a showing of the predicates required for a writ *ne exeat republica* is not the only way a passport may be revoked to comply with the requirements of Due Process. This Court agrees. A showing of the predicates required for a writ *ne exeat republica* is not applicable and not required before the Department of State can revoke a passport for a taxpayer certified by the IRS under the FAST statute. The common law writ was one mechanism used to enforce the tax laws. In its wisdom, Congress decided to give the IRS an additional tool, via the

FAST statute, to enforce those laws. Plaintiff cited no precedent suggesting that Congress is barred from creating an additional enforcement tool because a different enforcement tool was previously used at common law and subsequently codified in § 7402. Indeed, § 7402 is explicit that the writ of *ne exeat republica* (among other listed remedies) is "in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."

## CONCLUSION

Accordingly, this Court finds that Mr. Maehr cannot carry his burden to demonstrate that the State Department's decision to revoke his passport based on the certification by the IRS under the FAST statute is unconstitutional. The Court also finds that amendment of the Complaint would be futile.

## RECOMMENDATION

**WHEREFORE**, for the foregoing reasons, it is hereby **RECOMMENDED** that Defendant United States' Motion to Dismiss (Dkt. #46) be **GRANTED**, and that Plaintiff's Amended Complaint (Dkt. #32) be **DISMISSED WITH PREJUDICE**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge*, Thomas v. Arn*, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colorado Dep't of Corrections*, **183 F.3d 1205, 1210 (10th Cir. 1999);**

*Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996).**

                                      BY THE COURT

Date:  September 27, 2019
       Denver, Colorado                  N. Reid Neureiter
                                          United States Magistrate Judge